STATE of Missouri, Respondent,

v.

Michael ATHANASIADES, Appellant.

Michael ATHANASIADES,
Movant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 59545, 61591.

Missouri Court of Appeals,
Eastern District,
Division Two.

May 11, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 10, 1993.

Application to Transfer Denied
Aug. 17, 1993.

---

N. Scott Rosenblum, Ramona L. Marten, Arthur Margulis, Clayton, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Hugh L. Marshall, Asst. Atty. Gen., Jefferson City, for respondent.

CRANDALL, Presiding Judge.

Defendant, Michael Athanasiades, appeals from the judgment of convictions, after a jury trial, of murder in the first degree and armed criminal action. He was sentenced to life imprisonment without eligibility for probation or parole and a con-

secutive term of imprisonment of twenty-five years. Defendant also appeals from the order denying his Rule 29.15 motion for postconviction relief. We affirm the direct appeal. The denial of defendant's motion for postconviction relief is affirmed in part and reversed in part and remanded.

Defendant does not challenge the sufficiency of the evidence. The evidence, viewed in the light most favorable to the verdict, reveals that on May 20, 1989, defendant shot his wife to death at their home. The victim sustained five bullet wounds, two of which were in her back. Defendant claimed self-defense. He testified that his wife attacked him with a knife.

## I. RULE 29.15 APPEAL

We first consider defendant's claim that the motion court was clearly erroneous in refusing to allow defendant to testify at the hearing and present witnesses in support of his motion for postconviction relief.

Defendant filed a Rule 29.15 motion. Thereafter, an amended motion and a second amended motion were filed. The second amended motion alleged 69 points and endorsed 31 witnesses, including defendant.[1] Faced with the near herculean task of resolving the numerous points raised by defendant, the motion court held a pretrial conference with counsel for the State and defendant for the purpose of determining which points merited an evidentiary hearing and which witnesses would be called to testify by defendant. Thereafter, the motion court issued an order limiting an evidentiary hearing to 23 points raised by defendant and permitting the defendant to only call his trial counsel as a witness.

The evidentiary hearing was held and the testimony of defendant's trial counsel was adduced. The motion court issued extensive findings of fact and conclusions of law and denied defendant any relief.

At issue is the interpretation of Rule 29.15(h), which provides in pertinent part:

At any hearing ordered by the court the movant need not be present. The court may order that testimony of the movant shall be received by deposition.... The movant has the burden of proving his grounds for relief by a preponderance of the evidence.

■■■ A postconviction action is an independent civil proceeding governed by law applicable to civil cases. *State v. Finerson*, 826 S.W.2d 367, 371 (Mo.App.1992). Defendant does not have a Sixth Amendment right to confrontation in a proceeding for postconviction relief. *Id.* In any hearing ordered by the court movant need not be present, but the testimony of movant may be offered by deposition. *Cf. Cain v. State*, 780 S.W.2d 66, 67 (Mo.App.1989). Thus, whether defendant is entitled to be present is addressed to the sound discretion of the motion court.

■■■ Here, defendant's motion focused on a claim of ineffective assistance of trial counsel. Yet the only testimony that defendant was permitted to present was that of the trial counsel that defendant claimed was ineffective. The motion court then made factual determinations on defendant's allegations based upon the credibility of that witness. Defendant was not permitted to present his own testimony to support his position or to rebut the testimony of his former trial counsel.

For example, in paragraph 11) of his second amended motion, for which defendant's trial counsel gave testimony, defendant alleged:

[Trial counsel] was ineffective for raising the issue of whether the defendant had physically assaulted the victim prior to the date of the death of the victim in his cross examination of Eleni Zavradinos. Upon direct examination the State questioned the witness as to whether she saw the defendant strike the victim.... And she replied in the negative. On cross examination counsel ... sought to impeach this favorable testimony by impeaching her with what counsel incor-

---

1. A later consolidated motion filed on behalf of defendant was properly rejected by the motion court as untimely.

rectly believed to be a prior inconsistent statement. Counsel asked the witness if she had said she observed the defendant push the victim down a flight of stairs and kick her several times when the victim was six months pregnant. Counsel repeatedly attempted to ask this question which further highlighted an inference of the defendant's (otherwise inadmissible) alleged prior bad conduct. The witness [sic] response was that she had told the police about this incident but she did not witness it but rather was told it by the victim. This incident is referred to repeatedly. The prejudicial effect of any reference to this incident far outweighs any probative value of demonstrating a prior inconsistent statement. Such misjudgment can hardly be considered trial strategy.

At the evidentiary hearing, in response to this allegation, trial counsel claimed that he did not want to impeach the witness who testified she had never seen physical violence between defendant and the victim. Nonetheless, he testified that he impeached the witness

with the fact that she had previously told the police that she had witnessed the defendant throw the deceased down the steps or that he threw them down the steps or threw her down the steps....

According to his trial counsel, this was done at defendant's insistence:

\* \* \* \* \* \*

A It was my client who wanted to bring that out. I did not see any reason to bring that out. And I thought it ought not to be brought out, but he insisted upon it. Michael—Michael A.—if you don't mind, I'll call him that. That seems to be what everybody does—Michael A. was adamant that I must bring out the fact that she had lied to the police or was lying here, and so we did.

Q [Postconviction counsel] Okay. The complete statement was that Zeta [defendant's wife] was six months pregnant?

A Something like that.

Q And he threw her down the stairs?

A Pushed her down the stairs. That's right.

Q And kicked her?

A I don't remember. I think it was a bad scene that I did not want in evidence.

\* \* \* \* \* \*

Q In this particular case, you allowed Michael A. to dictate what questions you asked of witnesses?

A I did.

Q What evidence you introduced?

A Absolutely.

Q Even though you felt that the evidence was extremely damaging to your client?

A I put witnesses on the stand that I, if left to me—

Q Sir, could you answer?

A —would not have put on the stand. The answer is 'yes.'

Q All right.

A I'm sorry. The answer is 'yes.'

Q If you want to explain, please go ahead.

A No. I put witnesses on the stand that I would not ordinarily have put on the stand because Michael Athanasiades required it. And you asked me my feeling about it.

\* \* \* \* \* \*

Q So in this particular case you felt your obligation to defer to your client more important than your obligation to zealously represent him?

A Well, how do you tell a man not to take the witness stand?

Q I am not asking about that question, sir.

A Well—

Q In the particular issue of cross-examination of a witness.

A Absolutely. I cross-examined the way I thought it should be done. He then demands that I go further than I have gone. And I went ahead, and I asked the questions that he wanted. It's his law suit. It's his life. We have got to let these clients and the general public realize that we have some feeling for them. Had this happened, and I didn't

do that, why he would be—probably have another point.

\* \* \* \* \* \*

The motion court found this testimony persuasive, as evidenced by its Memorandum Order and Opinion:

Trial counsel, a lawyer with over forty years' experience and of wide repute, testified emphatically that he did not want to impeach the witness on this point, but that movant was 'adamant' and 'insisted' that it be brought out in order to reveal to the jury that witness Eleni Zavradinos had lied to the police about the kicking incident. Trial counsel noted he was the third lawyer to represent movant in this matter, that movant insisted on 'running the case,' and that movant won many of their arguments over how the defense was to be conducted. Trial counsel stated he has more often deferred to criminal clients lately when they insist on a particular matter, because of post-trial inquiry into whether a lawyer did what was asked of him by the client. The court finds counsel's testimony to be credible.

The transcript reflects that trial counsel tried to impeach Eleni Zavradinos with evidence of her lying to the police, and to show her bias and prejudice, as insisted upon by movant.... It is also clear to the Court from the course of this post-conviction proceeding that movant is a particularly strong-willed person who wishes to control all aspects of his legal matters. The transcript in the underlying criminal file reveals that movant sought to have considerable control over his defense and the conduct of his trial, going so far as to request permission to make a portion of his own closing argument.... In the instant matter, movant filed a Request to Proceed with Hybrid Representation, which was denied, and a *pro se* Petition for Writ of Mandamus with the Court of Appeals, Eastern District. Movant is not the ordinary defendant, if there is such a person.

\* \* \* \* \* \*

In this case, the strategy followed was that insisted upon by movant. A defendant may not mandate a course of conduct by his lawyer, and then challenge the lawyer for incompetence based on defendant's directives. Trial counsel accomplished movant's purpose to the best of his ability. He could not testify for the witness or put words in her mouth. The Court finds that trial counsel's decision to acquiesce to the demands of his client was not unreasonable. Point denied.

Whether trial counsel was following the instructions of his client; whether defendant is "a particularly strong-willed person who wishes to control all aspects of his legal matters"; whether the testimony of trial counsel is in fact credible, are issues that cannot be fairly adjudicated without consideration of defendant's testimony. The motion court abused its discretion in limiting defendant's evidence to the testimony of the attorney that defendant claimed to be ineffective. Defendant should have been permitted to present his own testimony either in person or possibly by deposition. Defendant's point is granted.

We next consider defendant's claim that the trial court erroneously granted the State's request for a change of judge under Rule 51.05.

After defendant filed his Rule 29.15 motion, the trial judge entered an order granting an evidentiary hearing and directing that arrangements be made to have defendant present for the hearing. The State then sought and received a change of judge pursuant to Rule 51.05. Thereafter, defendant invoked Rule 51.05 and another change of judge was granted. The court ultimately hearing the motion denied defendant's request to be present.

■ As previously stated, a Rule 29.15 action is an independent civil proceeding governed by the Rules of Civil Procedure insofar as applicable. Rule 29.15(a); *Finerson*, 826 S.W.2d at 371. Rule 51.05 grants a party to a civil action the right to seek one change of judge without alleging or proving cause. Rule 29.15(a), however,

directs that a movant seek relief in the *sentencing* court.

The Missouri Supreme Court resolved this apparent conflict between these rules, holding that Rule 51.05 does not apply to motions for postconviction relief under Rule 24.035 or Rule 29.15. *Thomas v. State*, 808 S.W.2d 364, 367 (Mo. banc 1991). *Thomas* governs this case. *See Phelps v. State*, 827 S.W.2d 742, 746 (Mo.App.1992).

In addition to administrative efficiency and reducing unnecessary delay, there is a more cogent reason for having the trial judge hear the motion. Most claims for postconviction relief focus on ineffective assistance of trial counsel. *Thomas*, 808 S.W.2d at 366. The judge who tried the case is "better equipped to assess defense counsel's performance within the context of the entire case and to measure the impact of that performance on the outcome of the trial as required by *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." *Thomas*, 808 S.W.2d at 367. Application of Rule 51.05 is a "hinderance to the integrity of the postconviction rights granted convicted persons under our rules." *Id.*

The State argues that defendant waived any claim of error by not objecting to the State's motion requesting a change of judge and by then seeking and receiving a change of judge on his own behalf. We disagree.

The salient point of *Thomas* is that effective adjudication of a postconviction motion is best achieved by having the motion reviewed by the sentencing judge who is familiar with the case. *Id.* at 366. It would not be uncommon for a defendant to want a different judge other than the one who had presided over his trial and imposed a severe sentence. Likewise, a prosecutor who had been chastised by a trial judge for his trial tactics might well want another judge to hear the postconviction motion. In other words, both parties might want a judge who was not conversant with what actually went on at trial. Such strategic choices, however, cannot override the objective of effective postconviction review. Thus, the nonavailability of an automatic change of judge under Rule 51.05 is not subject to waiver by either party. In absence of a showing of actual prejudice on the part of the judge or some other exigency that would prevent that judge from acting, a motion for postconviction relief should remain with the sentencing court.

We therefore hold that error was committed in granting both changes of judge pursuant to Rule 51.05. Defendant's point is granted.

■ We now briefly address defendant's other claims of error relating to his motion for postconviction relief. Defendant claims he was prejudiced by the ineffectiveness of his postconviction counsel. This claim, however, is not cognizable on appeal from the postconviction proceeding. *State v. Bradley*, 811 S.W.2d 379, 384 (Mo. banc 1991). Only where defendant specifically alleges conduct constituting an abandonment of postconviction counsel is the claim properly addressed on appeal. *See Luster v. State*, 785 S.W.2d 103, 107 (Mo.App. 1990). There is nothing in the record before us to support a finding of actual or constructive abandonment by postconviction counsel. Defendant's point is denied.

Defendant next contends that the motion court erred in rejecting his claim of prosecutorial misconduct, to wit, subornation of perjury, without an evidentiary hearing. Having made this improvident allegation, defendant fails to plead sufficient facts to support his contention. Defendant's claim does not merit further discussion and an opinion on this point would have no precedential value. Defendant's point is denied. Rule 84.16(b).

Having concluded that defendant was improperly limited in his presentation of evidence at his motion hearing and that error was committed when defendant's Rule 29.15 motion was not heard by the sentencing judge, we now consider what relief is warranted.

Many of the points alleged by defendant were dismissed by the motion court without an evidentiary hearing; some were voluntarily dismissed by defendant. Although the sentencing judge should have made

these rulings, deviation from the direction of *Thomas* is not critical except for those evidentiary matters where credibility and factual determinations are necessary. In addition, most of the motion court's rulings are not *specifically* challenged by defendant on appeal. We have reviewed the motion court's rulings on the nonevidentiary matters and do not find them clearly erroneous. *See* Rule 29.15(j). Thus any error under *Thomas* in regard to those points is harmless.

Accordingly, the denial of defendant's Rule 29.15 motion is reversed and remanded as to the points in which he was granted an evidentiary hearing and which he did not voluntarily dismiss; in all other respects the denial of the motion is affirmed. In view of our remand, we do not consider defendant's remaining point claiming multiple errors of trial counsel.

## II. DIRECT APPEAL

First, defendant asserts that the trial court denied him meaningful allocution pursuant to Rule 29.07 upon refusing to allow defendant to present evidence allegedly demonstrating the illegality of his convictions.

Rule 29.07 provides in pertinent part:
(b) Sentence
(1) Allocution and Imposition of Sentence.
.... When the *defendant* appears for judgment and sentence, he *must be* informed by the court of the verdict or finding and *asked whether he has any legal cause to show why judgment and sentence should not be pronounced against him; and if no sufficient cause be shown, the court shall render the proper judgment and pronounce sentence thereon....*
(Emphasis added).

■ Allocution is granted so that the defendant has an opportunity to raise any infirmities in the sentencing procedure. *State v. Feeler*, 634 S.W.2d 484, 487 (Mo. App.1981). Here, the record disclosed that the trial court complied with rule. The only limitation imposed was that defendant was not permitted to reargue the evidence.

In addition, failure to grant a defendant allocution is not fatal to the sentence where defendant has been heard on his motion for new trial. *State v. Scott*, 621 S.W.2d 915, 918 (Mo.1981). "Heard on the motion for new trial" within the meaning and intent of Rule 29.07(b)(1) is satisfied where the motion was considered and acted upon following argument by the parties. *See Scott*, 621 S.W.2d at 918. That was done in this case. Defendant's point is denied.

■ Finally, defendant argues that the trial court erroneously overruled his objections to the admission of hearsay testimony regarding the victim's state of mind.

"[D]eclarations of a decedent demonstrating state of mind, where relevant, are admissible." *State v. Luster*, 750 S.W.2d 474, 477 (Mo.App.1988). Defendant's claim of self-defense renders this testimony relevant, as it tends to negate the defense. *Id.; State v. Singh*, 586 S.W.2d 410, 419 (Mo.App.1979). Further, any prejudicial effect of such statements is outweighed by their probative value, *see Singh*, 586 S.W.2d at 418, particularly as the court instructed the jury on the limited purpose for which the statements were admitted. *Compare State v. Randolph*, 698 S.W.2d 535, 539–540 (Mo.App.1985). Point denied.

The judgment of conviction and sentence on direct appeal is affirmed. The denial of defendant's Rule 29.15 motion is affirmed in part and reversed in part and remanded to the sentencing court with directions to proceed in a manner consistent with this opinion.

PUDLOWSKI and GRIMM, JJ., concur.